```
                        UNITED STATES DISTRICT COURT
                    FOR THE MIDDLE DISTRICT OF PENNSYLVANIA


WELLS FARGO, N.A., as trustees        :
for WaMu Mortgage Pass-Through        :CIVIL ACTION NO. 3:12-CV-2124
Certificates Series 2004-PR2          :
Trust,                                :(JUDGE CONABOY)
                                      :
          Plaintiff,                  :
                                      :
          v.                          :
                                      :
JODI LITUS and ALLISON LITUS,         :
                                      :
          Defendants.                 :
                                      :
```

## **MEMORANDUM**

Here we consider the Motion of Plaintiff for Summary Judgment (Doc. 21). With this Motion, Plaintiff requests the Court grant Judgment in Mortgage Foreclosure in its favor. (Doc. 21 at 15.) Plaintiff has also filed Brief in Support of Plaintiff's Motion [for] Summary Judgment (Doc. 23) and Plaintiff's Statement of Material Facts Pursuant to Local Rule 56.1 (Doc. 24). Defendants filed Defendants' Reply to Plaintiff's Statement of Material Facts and Counterstatement of Material Facts (Doc. 27) on August 22, 2013, and Brief in Opposition to Plaintiff's Motion for Summary Judgment (Doc. 28) on August 28, 2013. Plaintiff did not file a reply brief, and the time for doing so has passed. Therefore, this Motion is ripe for disposition. For the reasons discussed below, we conclude summary judgment is not proper at this stage of the proceedings.

## **I. Background**

On June 24, 2004, Defendants borrowed the principal sum of $254,000.00 from Washington Mutual Bank, FA, as evidenced by a promissory note. (Doc. 24 ¶ 1; Doc. 27 ¶ 1.) To secure their obligations under the Note, Defendants contemporaneously executed a mortgage (the "Mortgage") in favor of Washington Mutual Bank, FA, describing and encumbering certain real property located at RR7 Bx 7648 Cherry Lane Road a/k/a 1058 Cherry Lane Road, East Stroudsburg, PA 18301 (the "Mortgaged Premises"). (Doc. 24 ¶ 2; Doc. 27 ¶ 2.) The Mortgage was duly recorded in the Office of the Recorder of Deeds of Monroe County on July 30, 2004, 2004 Book 2197, Page 7893*, et seq.* (Doc. 24 ¶ 3; Doc. 27 ¶ 3.)

According to Plaintiff, Washington Mutual Bank, formerly known as Washington Mutual Bank, FA was closed by the Office of Thrift Supervision and the Federal Deposit Insurance Corporation ("FDIC") was named receiver on September 25, 2008. (Doc. 24 ¶ 4.) Those assets were purchased by JPMorgan Chase Bank ("JPMorgan Chase"). (*Id.*) Pursuant to the terms and conditions of a Purchase and Assumption Agreement between the FDIC and JPMorgan Chase dated September 25, 2008, JPMorgan Chase acquired certain assets, including all loans and all loan commitments of Washington Mutual by operation of law. (Doc. 24 ¶ 4; Schoppe Aff., Doc. 21-1 at 38.) On April 11, 2011, an Assignment of Mortgage document was executed. (Doc. 24 ¶ 4; Doc. 21-1 at 42.) The document states that JPMorgan

Chase "does grant, bargain, sell, assign and transfer to Wells Fargo, N.A., as Trustee for WaMu Mortgage Pass-Through Certificate Series 2004-PR2 Trust." (Doc. 21-1 at 47.) A Corrective Assignment of Mortgage was executed on August 30, 2012, and reassigned the mortgage to Plaintiff. (Doc. 24 ¶ 6; Doc. 21-1 at 47.)

The Affidavit of Opal J. Daigle, Vice President of JPMorgan Chase, states that Defendants' mortgage was in default and the default had not been cured so the entire balance was due. (Doc. 24 ¶ 7; Doc. 21-1 at 52.) The first missed payment was on August 1, 2010. (Doc. 24 ¶ 7.) Defendants admit that they failed to make the August 1, 2010, payment. (Doc. 27 ¶ 7.) Defendants assert that after the initial missed payment, they had numerous contacts with Plaintiff, its predecessors, and its designees regarding mortgage modifications. (*Id.*) Defendants further assert they were instructed by Plaintiff's representative to not make payments during the mortgage modification process. (*Id.*)

On October 15, 2010, Defendants were sent a Notice of Homeowner Emergency Assistance in accordance with 35 P.S. § 1680.402c *et seq.*, commonly known as Act 91. (Doc. 24 ¶ 8; Doc. 27 ¶ 8.)

Plaintiff asserts it filed this action on October 24, 2012, because Defendants failed to cure the default. (Doc. 24 ¶ 9.) This action in mortgage foreclosure seeks the amount of principal

3

and interest, together with other charges as authorized by the Loan Documents. (*Id.*)  As of April 25, 2013, Plaintiff asserts the total amount due was $317,073.41.  (Doc. 27 ¶ 14.)  Defendants agree only that Plaintiff filed the action and the loan documents contain the language identified by Plaintiff.  (Doc. 27 ¶ 9.)  As to the amount allegedly owed, Defendants state they do not have sufficient information to admit Plaintiff's allegations and Plaintiff has not provided the Rule 26(a) disclosures.  (*Id.*)  Defendants add that there has been no discovery in this case and, therefore, Plaintiff's summary judgment motion is premature.  (Doc. 27 ¶ 14.)

In their Counterstatement of Material Facts ("CMF") (Doc. 27 at 3-6), Defendants identify the property at issue as a rental property, their main residence being in Yardley, Pennsylvania.[1] (Doc. 27, CMF ¶¶ 2, 3.)  The property is insured for $1,628,000. (*Id.* ¶ 20.)  Defendant Jodi Litus states he had numerous contacts with Washington Mutual, Chase Bank and its designee since at least August 31, 2009.  (*Id.* ¶ 4.)  On August 31, 2009, Mr. Litus spoke with a case manager identified as a representative of Washington Mutual/Chase and discussed a mortgage modification.  (*Id.* ¶ 5.) Mr. Litus was told the conversation was being recorded.  (*Id.* ¶ 6.)

---

[1] Based on the discovery status of this case and the facts that Plaintiff did not file a reply brief or response to Defendants' Counterstatement of Material Facts, we set out assertions made in the Counterstatement without qualification.

4

He was told the same about many subsequent conversations. (*Id.*) In the August 31, 2009, conversation, Mr. Litus was advised that in order to qualify for a mortgage modification he would have to miss three consecutive payments before Washington Mutual/Chase would consider discussing any modification. (*Id.* ¶ 7.)

In a call that occurred between September 30, 2012, and October 12, 2010, (after Defendants' missed the third payment), a Washington Mutual representative directed Defendants not to make payments because this would lengthen the mortgage modification process and create confusion for the underwriter's bookkeeping for escrow amounts. (*Id.* ¶ 8.) Mr. Litus was advised the call would be recorded. (*Id.*) Defendants applied for a mortgage modification and did not make payments. (*Id.* ¶ 9.)

On twenty-four occasions between June 4, 2010, and June 4, 2011, Mr. Litus either spoke or corresponded with Chase Bank or its representatives, providing requested documentation for the mortgage modifications that were described as available to Defendants. (*Id.* ¶ 11.) During this time there were four "relationship managers" assigned to Defendants' account, all of whom continued to request the same information. (*Id.* ¶ 12.)

On twelve occasions between June 21, 2011, and June 1, 2012, Mr. Litus either spoke or corresponded with Chase Bank or its designated representatives and each time provided them with the documentation requested for mortgage modification programs they

indicated were available to Defendants. (*Id.* ¶ 13.) By June 1, 2012, the seventh relationship manager, Maria, contacted Mr. Litus and advised him that the modification had been declined and to try another application. (*Id.* ¶ 14.)

In April 2013, Mr. Litus met with a Chase representative and was given guidance on a path for mortgage modification. (*Id.* ¶ 15.) On April 5, 2013, Mr. Litus spoke with Kristen Smith, who requested additional information for another mortgage modification. (*Id.* ¶ 16.) Six days later, Chase authored a letter stating Defendants were not eligible for modifications as they did not provide all of the required documents in the required timeframe. (*Id.* ¶ 17.) The correspondence also indicated that Chase had sent one or more letters with a list of documents needed in order for the modification review to be completed. (*Id.*) Defendants aver they had not received notice of a timeframe for submission of documents nor were they provided a list of documents. (*Id.* ¶ 18.) They further aver they have complied with all directives of Washington Mutual and other entities designated by it in an attempt to correct the initial payment lapses and have complied will all of Plaintiff's requests in a timely manner. (*Id.* ¶¶ 21, 23.)

## **II. Discussion**

### *a. Summary Judgment Standard*

Summary judgment is appropriate when the movant demonstrates there is no "genuine issue as to any material fact." Fed. R. Civ.

P. 56(a). "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

"An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson*, 477 U.S. at 248). In determining whether a genuine issue of fact exists, a court must resolve all factual doubts and draw all reasonable inferences in favor of the nonmoving party. *Conoshenti v. Public Serv. Elec. & Gas Co.*, 364 F.3d 135, 140 (3d Cir. 2004) (citation omitted).

The initial burden is on the moving party to show an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986) (citations omitted). The moving party may meet this burden by "pointing out to the district court [] that there is an absence of evidence to support the nonmoving party's case when the nonmoving party bears the ultimate burden of proof." *Id.* at 325. The non-moving party may not rest on the bare allegations contained in his or her pleadings, but is required by Federal Rule of Civil Procedure 56 to go beyond the pleadings by

7

way of affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue. *Id.* at 324. Where underlying facts are in dispute, the facts are viewed in the light most favorable to the plaintiff. *Abramson v. William Patterson College of N.J.*, 260 F.3d 265, 267 (3d Cir. 2001) (citing *Drinkwater v. Union Carbide Corp.*, 904 F.2d 853, 854 N.1 (3d Cir. 1990). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of evidence." *Anderson*, 477 U.S. at 255. Therefore, when evidentiary facts are in dispute, when the credibility of witnesses may be in issue, or when conflicting evidence must be weighed, a full trial is usually necessary.

### *b. Plaintiff's Motion*

Given the standard set out above, only a brief discussion concerning the substantive merits of Plaintiff's motion is necessary. Plaintiff asserts that under the governing Pennsylvania law the only issues to be determined in this case are the issues of default and the total amount due. (Doc. 23 at 6.) Based on Defendants' responses to Plaintiff's Statement of Material Facts, Defendants' Counterstatement of Material Facts, and brief in opposition to Plaintiff's motion, the issues of default and the total amount due are contested. (Docs. 27, 28.) Importantly, Plaintiff did not file a response to the Counterstatement of

8

Material Facts, nor did Plaintiff file a reply brief. Stated facts that are not controverted by the opposing party's responses thereto are deemed admitted. *U.S. ex rel. Paranich v. Sorgnard*, 396 F.3d 326, 330 n.5 (3d Cir. 2005). Local Rule 56.1 requires citation to the record in support of asserted facts. Rule 56.1 Local Rules of Court of the Middle District of Pennsylvania. Here, Defendants attached the Affidavit of Defendant Jodi Litus to their Counterstatement. (Doc. 27-1.) Given the procedural posture of this case, we deem this sufficient support in that Plaintiff filed the summary judgment motion before discovery was conducted and further record support may not be available to Defendants.

Based on the averments of the parties and the status of the record, we agree with Defendants that Plaintiff has filed its motion prematurely. Therefore, the motion is denied.

### III. Conclusion

For the reasons discussed above, the Motion of Plaintiff for Summary Judgment (Doc. 21) is DENIED. An appropriate Order is filed simultaneously with this Memorandum.

S/Richard P. Conaboy
RICHARD P. CONABOY
United States District Judge

DATED: October 11, 2013

9